Eley v. Erickson Good morning, Your Honors. My name is Peter Levin, and I represent the appellant in this case. And if Your Honors please, I would like to reserve five minutes at the end for rebuttal. If Your Honor please, in this case, this Court has certified three issues under Certificate of Appealability. In this 2254, I would like to discuss the first issue, was the appellant's federal due process rights violated when he was convicted of the crimes in this case under insufficient evidence. If Your Honor please, I would submit, and I've also read the Commonwealth's letter in response to Your Honor's questions, that the only evidence presented in this case against the appellant was the fact that he was at the scene of the crime, supposedly, and that he left with other people. I would submit that that was not enough evidence. Leaving with other people is putting it mildly, I think. I mean, he actually ran away with other people. Well, the courts have said that evidence of flight and evidence of being with the people alone is not sufficient. Not alone. Well, I don't know. But certainly a jury can infer guilt or culpability from flight, right? Well, the situation in this case is that he was seen running. We don't know exactly from what took place at the trial that he was seen running after the shooting took place or whatever. If that information is before the jury, three men together and at about the same time, one of them points a gun inside a taxi and shoots it three times. And then the three men that were previously together run away. That information is before the jury. Why can't they infer that he was part of the group that caused the taxi driver's death? Because evidence of flight and mere presence alone cannot sustain a verdict of guilty. Plus, he made a false statement. There was a third aspect that you failed to mention. That flight presence and he made a false statement at the time, from which also you can infer consciousness of guilt. Well, I would argue that it wasn't a false statement. He basically said to the detective that he hadn't been in that particular location for two weeks. You can argue that, but that's not what the court held. I mean, it's an argument you can make, but the court had three things before him. He was there, he ran, and he subsequently made a false statement. You could argue it wasn't a false statement, but a jury could reasonably infer that that was a false statement. Well, I think in that statement, he basically said he was there at eight o'clock in the evening. That's what he told the public defender for the other defendant. And in his statement to, the other statement he made to the detective, he said he hadn't been on the scene for two weeks. I've been there almost every day for forever. Right. But you had Jennifer McDonald's testimony that she saw him there just moments before. Well, I understand that she said she saw him on the scene there, but again... I mean, from that statement, the jury can easily infer that he was lying about not being at the scene, and can't they infer his participation as a result? Well, again, I would go back to my initial thing, that there was no evidence of any accomplished testimony. There's no evidence that he got anything out of this. There was no evidence of any type of agreement between these three men that took place. But the jury can infer agreement, and he doesn't have to get anything out of it in order for the jury to conclude that he's culpable. Well, the jury can infer it, of course, but I would say that if they infer that, they're going on impermissible grounds at this point. But there was testimony that the cab driver had money, the cab driver had a pouch, the cab driver was shot, the cab driver was killed, there was no pouch in the taxi, and there was no money in the taxi. I can't, the jury, infer that whoever shot him also took the money. Except for the fact that there was no money found in my client, no proceeds found, no weapons found in my client, no fingerprints. We agree with that. Okay. Mr. Levin, an overriding question. Hasn't your case been made all the more difficult as a result of the Supreme Court's decision in Coleman v. Johnson? I understand that it is, but I'm still arguing in this particular case. But that's my question. Yes. I mean, how? Yes. I mean, Coleman. It overruled. Yeah. Coleman v. Johnson not only overruled the case that you cited as a comparison, but Summarily. Summarily, which it doesn't often do. But it, in I thought rather pointed language I was hoping you wouldn't bring that up, Your Honor. Reminded, reminded our court of the double-level deference that we owe not only to state juries but to state court determinations under AEDPA. I mean, how do you, how do you distinguish factually the evidence against your client versus the evidence that the prosecution had in the case against Lorenzo Johnson? Well, I think the only thing I can say, Your Honor, is just, you know, repeating the facts which I believe Your Honors don't find convincing. Really different facts. I thought Johnson was a much stronger case. But you have a, you have a weapon under a black coat and you have them walking out together and you have them together and one goes in the alley and Walker was standing there as if he's a lookout guy. I mean, that's a very strong, your case is a lot weaker, I thought. Yes. Well, how can you say you can't distinguish it? No, no, I'm saying I think it's a difficult situation with that overruling it. But as I said before, I mean, I distinguished it before and I believe that Your Honors are saying that you're tending to believe that the evidence in my case is strong and I am indicating it's not. I mean. Well, what's the difference? In other words, we've all read Colvin Johnson. Yes. How is your case not a stronger case for reversal than Johnson was? Well, because I believe as the points that I have stated. There was no evidence of any agreement. I believe the district court judge in this case said that there was an agreement. There was no agreement. There was no agreement in Johnson though. Okay, so again, we just have these men on the scene together at some point and leaving together. Okay. Okay. Okay. There was no. I'm sorry. Your client was convicted of conspiracy to rob, robbery and murder. Now, the jury has to find evidence of an agreement to convict him of a conspiracy. All right. But they don't need to find evidence of an agreement to convict him of robbery and murder if they find that he was an accomplice. Right. And I am arguing that there was no evidence whatsoever of accomplice testimony. I'm saying that he was on. I mean, I can't argue the fact that he wasn't on the scene at some point and that he left with this man. What's the difference between this case and Johnson? Because I'm saying that there was no agreement here that was shown. What agreement was shown in Johnson? They left together and the next thing the guy got killed. But they didn't spell out any agreement to murder the guy. I'm just saying that there's an insufficiency in this case. Well, our problem is we have to distinguish this case from Johnson. And Johnson, it's obvious that the Supreme Court is very deferential to state court criminal verdicts. And we already got our head handed to us once. What distinguishes this case from Johnson? I mean, my belief is this is just a weaker case. Well, tell us the facts that make this a weaker case than Johnson. Well, you have three witnesses in our particular case. None of these witnesses can tie my client to being involved in what took place in the shooting. Johnson had a long black coat and he had a sort of shotgun. That was obvious to Walker. So Walker knew. But the question is, the difference is, did Eli know that there was a weapon that was about to be used to kill Johnson? Well, that certainly is not clear. It's a big difference, isn't it? You seem to suggest that they're pretty similar cases. I think the Supreme Court looked at the evidence very carefully and said, look, these guys clearly knew what was going on. Certainly Walker knew what Johnson was about to do. In fact, there was a single file taking this guy, Williams, right to where they were going to kill him. Or at least where Johnson was. That's a little different. Well, yes. I don't have to make a case for you. No, as I've stated, that there was no evidence here that my client knew what was going on. What's the difference between the two cases? Exactly. The same thing your client says, I didn't know what they were going to kill the guy. Well, with Johnson, he said the same thing. He said, I didn't know that. But there was no evidence that my client saw any weapon. There was no evidence that my client had any weapon whatsoever. There was no evidence tying my client into the premises where the weapons were found. There were no fingerprints whatsoever. There were no proceeds found on my client. And I believe that that is a stronger case for my client. Well, let's get the original three things that were mentioned. He was present, he ran, and he gave a false statement. Why isn't that under AEDPA? I'm not saying we would do it, but under AEDPA we have this double deferential standard of review, you understand. Why can't a state court reasonably say that's sufficient to prove guilt beyond a reasonable doubt? What's unreasonable about that? I think that they're making an unreasonable interpretation even of the Pennsylvania law because the Pennsylvania law says that flight and mere presence is not enough. And I contend, and I will continue contending, that that is all that they have in this particular case. Mr. Levin, let me, and if the court will indulge me, the time to ask you this question. Let me ask you another facet of this case. You raised it. Yes, Your Honor. Unfortunately, I didn't get a chance to get to it. The potential Bruton or Gray question on the redaction of the statement and whether or not the redaction of the statement was adequate or whether or not the way the statement that from, I think, Mitchell, or no, the statement of Eland, the statement of Eland that was redacted, did it impermissibly identify Ely in violation of Gray? Okay. Well, my argument is that it did, Your Honor. And I understand that the statement was redacted. But the way that the statement was redacted, and first off, there were no limiting instructions given until the detective testified. They were not given after the two informants from the prison testified because the lawyer never objected. So there was no limiting instruction until after the detective testified. But I am saying that because the words they were used in the confessions and the words two were used in the confession, that it particularly applied to the fact that there were three defendants on trial and that there were more than one. And my argument is that these were not neutral redactions. Like the court said, just to say the word delete in a redaction. They didn't do that. They did not do that. They did not do that. But the fact that the words two were left in there and the words they were left in there, I am saying is an improper redaction of the statement. And there were two defendants. Well, there were a total of three defendants on trial and also the word they was used. But your argument was more pointed than that. It said it was a COA. Your argument was that counsel was ineffective because it didn't object to the way that statement as redacted was offered. Correct, Your Honor. Okay. How do you establish prejudice? I'm sorry? How do you establish prejudice? I'm not sure I understand. Well, in order to establish ineffective assistance to counsel, you have to show deficient representation and prejudice. Well, I wasn't arguing that here because I didn't believe that that was part of the COA. Would you suggest that but for those comments, the result might have been different? If we had had an ineffective assistance of counsel challenge? But for the statements that were made, but the two and the they. I mean, that's one of the questions that was certified was whether the Superior Court unreasonably applied clearly established federal law when it held Ely's counsel was effective with respect to the co-defendant statement. I mean, that's part of the COA. Effectiveness means that he wasn't ineffective and if he was ineffective, you have to show strict one. Well, he never did. He never did. Obviously, he never objected. He only objected after the detective took the witness stand. But hadn't he previously objected? Had he previously? Hadn't he already previously objected to the other witness's redacted statement and that objection was overruled by the court? Well, I believe that the result would have been different had this been properly done. But as I'm saying, these statements came in and I am arguing that they were not redacted properly. Well, yeah, but the bottom line here is in your brief, you really argued this is a Bruton-Gray-Richardson violation. You didn't argue it was a Sixth Amendment violation of ineffective assistance of counsel. Your briefing did not really... That's correct, Your Honor. So as far as the ineffective assistance is concerned, that's really not part of your position here. Your position is it just violated Bruton-Richardson and Gray and that the statement killed him because it named him in effect without exactly naming him. That's correct, Your Honor. All right. That's correct. Okay. Thank you very much, Your Honor. If I could, one other question. Was there any testimony in the case that Ely was a friend of the shooter? I don't recall that there was, Your Honor. Okay. Okay. Thank you, Your Honor. Mr. McMurray. Good morning. May it please the Court. My name is Jason McMurray. I represent the appellee here today, the Commonwealth of Pennsylvania through the Office of the District Attorney at Dauphin County. I wanted to start off... Before you start off, can I ask something? Yes, sir. Do you concede that mere presence at the scene of a crime is not any proof of guilt? Yes, Your Honor. Why? The case law would support that. Okay. And would you also concede that running from the scene of a crime in and of itself is not any proof of guilt? Again, yes, Your Honor. The case law supports that as well. Okay. And would you concede that making a false statement concerning a crime is not any evidence of guilt? It may be a crime of making a false statement, I guess, to an officer, but it's not any evidence of participation in a crime in and of itself? In and of itself, I would probably agree with Your Honor that if that's all you had in and of itself... Okay, suppose you have all three. You have someone running from the scene of a crime from which they were present and subsequently make a false statement. Is that enough for a jury to conclude under the due process clause that a jury could reasonably conclude that that person is a participant, accomplice, whatever, of that crime? Yes, Your Honor, I do believe so. And in answering that question, also, I want to point out that that's not all the facts that the Commonwealth had. What else you got? We obviously had Mr. Ely being present at the crime. He was identified by... Well, that's where you acknowledge that. Numerous witnesses putting him there. We also have his actions at the time of the murder. What action besides him running and being at the scene? Well, the actions of being with the individuals as the one gentleman is going into the car, firing the shots, reaching in, coming back out, and firing the third shot while all three are still standing there and then all three together leave the scene of the crime. So he was at the crime and leaving. That's no proof that he participated in the crime. But I think it's more to that, Your Honor, if you look at the actions at the scene as well. Did you determine the time from the first shot to the third shot? They were... Rapid shooting? They were shot, shot, then the shot in that kind of fashion. About five or six seconds? Yes, Your Honor. I'm sorry, go ahead. But what about his being there in any way indicating that he was somehow a principal or an accomplice in the shooting? And I think it goes to his actions at the scene. Tell me the actions at the scene which are indicative of the facts from which the jury could reasonably conclude that he participated in that crime. It's probably more akin to the lack of things that he did not do. He did not leave once he saw the gentleman fire the first shot. He stayed at the scene. He did not flee. He fled in concert with the other individuals together. They took the same flight path. They did not go different directions. He just witnessed this man that he's with execute a taxi cab driver and yet he walks away with him, flees away with him, runs away. He could have gone a different way. So I think it's the absence of some of the choices that he could have made that the jury can infer consciousness of guilt. In addition, the detectives also found a stash of weapons in the flight path of the individuals as they ran in an abandoned house. In that regard, showing multiple weapons in that stash house would lead one to believe that not only one individual possessed weapons. The jury could reasonably infer that each individual present at the scene had weapons. Were the defendants connected to the stash of weapons? Was Ely connected to the stash of weapons? Ely was not connected to the stash of weapons. My understanding it all dealt with Mr. Island being connected with the stash of weapons through his own statements to the police trying to distance himself as to why he may have gunshot residue on his hands. In addition, with his story about being present at the scene earlier firing weapons within other individuals. I think Mr. Ely's flight with them in the direct relation and direct area of where these weapons were found, I think the jury could reasonably infer that involvement. And that's what we have judge. I mean, it's a circumstantial evidence case. I won't debate that. Well, I'll say it's even more convincing when it's circumstantial. But did you determine how far the three trio ran together? No. Only through the eyewitness testimony of how they fled and where they fled. I don't believe there was any other indication that anyone saw them in the house or those kinds of matters. It's just the type of weapons that were recovered were also indicative of the violence statement in that regard. From everything you've said there, I failed to grasp where anyone could reasonably make a conclusion that he acted together with one or more people to shoot the victim. He ran, whether he ran or didn't run. Now, you acknowledge that if he ran, that's not evidence of guilt, but then in the same breath you say that if there was a crime committed and he stayed, that's evidence of guilt. It's not evidence of guilt whether you stay or run. I think these issues are hard to look at in just generally without enunciating any specific facts. The Superior Court opinion said they acted together, but there's no facts to support that statement by the Superior Court. What in the record here indicates that he acted with anyone other than he was there, he ran and he was there. It also deals with the facts of the case with the eyewitness testimony that they were together previous  crime being committed. He hung out at this corner I guess with his buddies. But all three individuals approached the cab at the  time. Yeah, he's been friends with these guys and they know each other very well, but then you have presence and you can't relate that he's a criminal because he has friends that are criminals. No, I wouldn't argue that. Judge Fischer mentioned the Johnson case earlier. Maybe you can tell us what you think about Johnson and whether it applies in this case. And it seems to me that the facts are, they can be similar but they can also be quite different. Yes, Your Honor and Coleman versus Johnson is very similar.  evidence is sufficient to give deference to the jury's verdict finding the evidence sufficient to find the defendants guilty of the crimes charged. The appellate courts of Pennsylvania then again reviewing that evidence after the trial court reviewed it in motions but then again the Superior Court of Pennsylvania reviewing those issues and also finding that the evidence was sufficient and then moving forward to the district court and then moving forward to the federal court again reviewing those evidence and finding it to be sufficient under the standards enunciated in Jackson. So in that regard the facts I think the key in Johnson the Johnson case was the difference to be accorded to the underlying courts in their analysis of the facts. In your question your honor I don't think the facts necessarily are that different. Oh this Johnson are stronger but that doesn't mean what the court is saying in Johnson is that you get these cases on a case-by-case basis and you review them in that regard and so I'm looking at the case given the scant and we all read the superior court opinion and the superior court has presence light and of course he lied on the statement and the superior court made a statement that they acted together but there was nothing in the opinion of the superior court which detailed what those facts were from which it stated they acted together so I'm asking you to shore up the superior court opinion I can't reading the judge's mind but my position would be that you look at the individuals acting in concert from the beginning before the murder happened during the crime and after and when you do that you'll see that these three individuals were together they intended to approach this taxi cab there was evidence of a theft what evidence is that the petitioner here intended to approach this taxi cab other than he was with the three of them correct and I think you have to look at that he approached with all three individuals at the same time the same manner not all three approached the same time or even approached the cab all three individuals were eventually at the cab at the cab they were at the cab and one person got in the cab one person fired two shots before he fired two shots one person got in the cab and isn't there enough based on that factual scenario that the individuals involved intended to rob the cab driver isn't that all you have to show the facts of the perspective that you   show  jury and the jury is the right judge and the jury is the right judge and the jury is the     is       a jury supervisor is the jury is a jury curator manager is is a jury curator is a jury manager curator of the jury of the jury of the jury jury of the jury of the jury of the jury of the judge of the jury of the jury if the judge of the jury have any concerns so it can be ruled that we can expand our COA at any time. So address it strictly as a question. In regards to that, I don't believe Island's statement was in violation of gray the language that was presented the way it was redacted. If you look at the context of the way the testimony was presented, there's nothing on the face of the testimony that would implicate Ely directly by his comments. I believe someone mentioned there was friends or associates in the            by his comments. I don't believe Ely directly by his comments. I don't believe Ely directly by his comments. That's however  implicate Mr. Ely directly. There's  guys. The statement said it was the idea of the other two guys. The jurors look up there's only two other guys there. Who are the other two guys? And the jurors look up there's   other guys there. Who are the other two guys there? And the jurors look up there's only two other guys           jurors look up there's only two other guys there. And the jurors look up there's only two other guys there. I wish to argue the last issue about the jury instructions given by the trial judge. And our position is he gave an improper reasonable doubt to the jury when the jurors stated that the defendant guilty beyond a reasonable doubt should be set aside. I believe his exact language he was talking about two of the witnesses was Mr. Ramirez telling the truth these are all things for you to consider but if you're able to take those issues and put them over here on the shelf and still from all the other evidence find that the Commonwealth has proven the defendant guilty beyond a reasonable doubt of any of these charges of totality. Don't let a reasonable doubt about one of these side issues prevent you from reaching a verdict in this case. And we're objecting on that that he said number one that these were side issues prevent you from reaching a verdict in this case. I would argue that they were against the due process rights of my client. Thank you so much your honor. Thank you for your attention. Thank you. Okay. We'll allow you case. We'll take the matter under its own  Thank you.